UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

CAR FRESHNER CORPORATION; and
JULIUS SAMANN LTD,

                          Plaintiffs,

v.                                                      5:19-CV-1158
                                                        (GTS/ATB)
SCENTED PROMOTIONS, LLC d/b/a Scent USA;
PAULINA SLUSARCZYK; and SLAWOMIR M.
WARZOCHA, a/k/a Michael Warzocha, a/k/a
Michael Midas,

                          Defendants.
───────────────────────────────────────

APPEARANCES:                                    OF COUNSEL:

BOND SCHOENECK & KING, PLLC                     LIZA R. MAGLEY, ESQ.
   Counsel for Plaintiffs                       LOUIS ORBACH, ESQ.
One Lincoln Center
Syracuse, NY 13202

THE BILICKI LAW FIRM                            BYRON A. BILICKI, ESQ.
   Counsel for Defendants
1285 N. Main Street
Jamestown, NY 14701

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this trademark infringement action filed by Car Freshner

Corporation and Julius Samann LTD ("Plaintiffs") against Scented Promotions, LLC, Paulina

Slusarczyk, and Slawomir Warzocha ("Defendants"), is Plaintiffs' motion for default judgment

pursuant to Fed. R. Civ. P. 55(b). (Dkt. No. 17.) For the reasons set forth below, Plaintiffs'

motion is granted in part and denied in part.

I.      RELEVANT BACKGROUND

### A.     Plaintiffs' Complaint

Generally, in their Complaint, Plaintiffs assert the following nine claims: (I) a claim of federal infringement of a registered trademark; (II) a claim of federal trademark infringement and unfair competition; (III) a claim of federal trademark dilution; (IV) a claim of trademark dilution under N.Y. Gen. Bus. L. § 360-1; (V) a claim of common law trademark infringement and unfair competition; (VI) a claim that Defendants violated the Court's 2003 Consent Judgment; (VII) a claim that Defendants violated the Court's 2013 Consent Judgment; (VIII) a claim of breach of contract related to Defendants' violation of the 2003 Consent Judgment; and (IX) a claim of breach of contract related to Defendants' violation of the 2013 Consent Judgment.  (Dkt. No. 1 [Pls.' Compl.].)

### B.     Relevant Procedural History

On December 5, 2019, the Clerk of Court entered default against Defendants on all claims pursuant to Fed. R. Civ. P. 55(a).  (Dkt. No. 11.)  On January 11, 2020, Defendants filed a motion to vacate the Clerk's entry of default.  (Dkt. No. 16.)  On March 12, 2020, Chief U.S. Magistrate Judge Andrew T. Baxter granted Defendants' motion in part and denied Defendants' motion in part, vacating the entry of default as to Claims I through V, but declining to vacate the entry of default as to Claims VI through IX.  (Dkt. No. 23.)  On April 27, 2020, Defendants appealed Magistrate Judge Baxter's Decision and Order.  (Dkt. No. 26.)  On May 28, 2020, this Court denied Defendants' appeal.  (Dkt. No. 34.)

### C.     Parties' Briefing on Plaintiffs' Motion

#### 1.     Plaintiffs' Memorandum of Law

Generally, in their motion for default judgment pursuant to Fed. R. Civ. P. 55(b), Plaintiffs make seven arguments.  (Dkt. No. 17, Attach. 41 [Pls.' Mem. of Law].)  First,

Plaintiffs argue that they have sufficiently proven liability on Claims I and II because (a) they have federal registrations for the relevant trademarks, (b) Defendants are selling air fresheners using Plaintiffs' mark "Black Ice" in a way that is likely to cause confusion among consumers, (c) Plaintiffs have presented proof that all Defendants have been involved in the sale of these infringing products, and (d) all of Plaintiffs' allegations in their Complaint must be accepted as true for the purposes of this motion because Defendants have not provided an Answer to those allegations. (*Id.* at 17-19.) Plaintiffs additionally argue that the same proof supports a finding of liability on Claim V (state law trademark infringement) and they have additionally shown that Defendants' willful use of their trademark was in bad faith. (*Id.* at 19.)

Second, Plaintiffs argue that they have sufficiently proven liability on Claims III and IV because (a) they have claimed ownership of those marks, (b) they alleged that Defendants' use of those marks is likely to dilute the uniqueness of their marks and impair the marks' distinctiveness, and (c) Plaintiffs' marks are famous and widely recognized by the general public. (*Id.* at 19-20.)

Third, Plaintiffs argue that they have sufficiently proven liability on Claims VII and IX[1] for breaches of the 2013 Consent Judgment because their Complaint plausibly alleges both that breaches of that Consent Judgment have taken place and that Defendants are each liable for those breaches. (*Id.* at 20-23.) More specifically, Plaintiffs argue that Defendants are all bound by the Consent Judgment because a mere change in the name of the company since the 2013 Consent

---

[1] Plaintiffs are seeking default judgment on Claims VII and IX (which are based on the 2013 Consent Judgment) only because Claims VI and VIII (which are based on the 2003 Consent Judgment) are based on the same alleged conduct by Defendants and thus Plaintiffs acknowledge that they are entitled to only a single recovery of damages for that conduct, regardless of whether the conduct violated both Consent Agreements. When the Court refers to "Counts VI through IX" throughout this Decision and Order, it is with the recognition that Plaintiff is seeking default judgment and recovery under Claims VII and IX specifically.

Judgment was issued does not allow Defendants to escape from having to comply with the terms of the Consent Judgment when taking actions as the "new" company.  (*Id.*)

Fourth, Plaintiffs argue that the Court should enjoin Defendants from infringing and diluting Plaintiffs' trademarks because Plaintiffs have sufficiently shown that there is a likelihood of confusion and dilution, and because the balance of equities favors Plaintiffs as a result of Defendants' repeated willful infringement.  (*Id.* at 23-24.)

Fifth, Plaintiffs argue that the Court should disgorge Defendants' profits from the sale of their infringing products and award $68,078.70 in damages (treble the $22,692.90 in sales that Plaintiffs can prove) based on the evidence of willfulness of Defendants' use of the "Black Ice" trademark.  (*Id.* at 24-26.)

Sixth, Plaintiffs argue that the Court should award them $100,000 in liquidated damages related to ten breaches of the 2013 Consent Judgment because (a) the Consent Judgment provides for damages of $10,000 per breach, and (b) the Consent Judgment was based on an offer of settlement and thus typical contract principles apply to it.  (*Id.* at 26-27.)

Seventh, Plaintiffs argue that the Court should award $52,473.20 in attorneys' fees and costs incurred as of the date of the motion (January 24, 2020) because the Consent Judgment specifically requires Defendants to pay costs and attorneys' fees in the event of a breach and the Lanham Act also allows for the recovery of attorneys' fees by the prevailing party in exceptional circumstances.  (*Id.* at 27-28.)

### 2.      Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Defendants make four arguments. (Dkt. No. 39 [Defs.' Opp'n Mem. of Law].)  First, Defendants argue that the Court is not

permitted to consider or grant default judgment on Claims I through V because the Magistrate

Judge vacated the Clerk's entry of default as to those claims.  (*Id.* at 6.)

Second, Defendants argue that, if default judgment is granted on the other claims,

Plaintiffs are nonetheless not entitled to the amount of damages claimed.  (*Id.* at 6-14.)  More

specifically, Defendants argue that the amount of attorneys' fees requested is not reasonable or

proper for three reasons: (a) the request includes compensation for work on claims that are not

subject to default judgment and for making arguments that were not successful when Defendants

appealed the Magistrate Judge's decision; (b) the request also charges for unnecessary work,

including charging $31,000 for preparation of the memorandum of law related to the current

motion for default judgment despite the fact that this Court's Local Rules do not even require

such a memorandum for this type of motion; and (c) the hourly rates sought by Plaintiffs are far

in excess of what is reasonable in this district.  (*Id.*)  Defendants argue that a more proper amount

of attorneys' fees would be $6,236.50 if the Court finds that granting such fees is appropriate.

(*Id.*)

Third, Defendants argue that that Plaintiffs' claims of violations of the 2013 Consent

Judgment have not been substantiated and, in any event, the liquidated damages provision on

which Plaintiffs base their recovery request is unenforceable.  (*Id.* at 14-17.)  More specifically,

Defendants argue that enforcing the liquidated damages provision would result in a recovery that

is wildly disproportionate with the harm Plaintiffs actually suffered as the result of the alleged

breaches because Plaintiffs have not alleged any real harm (including actual confusion caused by

the alleged uses of phrases that Defendants are prohibited from using under the Consent

Judgment) or that any infringing product was ever produced or sold.  (*Id.*)  Defendants also argue

that the Consent Judgment was the not the product of arms-length negotiation between equal

persons.  (*Id.*)  Defendants additionally argue that, if the Court finds damages to be warranted, it should grant only $10,000 because that amount is more proportionate to the harm alleged.  (*Id.*)

Fourth, Defendants argue that the Court should exercise its discretion to not award default judgment because a default judgment would have an unduly harsh effect on Defendants based on (a) the fact that the current COVID-19 pandemic has severely hurt Defendants' business and having to pay damages on a default judgment would put them out of business, and (b) the fact that they are not as versed in trademark litigation in New York as Plaintiffs are and therefore Plaintiffs have had a distinct advantage in this litigation.  (*Id.* at 17-29.)  Defendants also argue that Plaintiffs have not been substantially prejudiced by the delay caused by Defendants' past failure to answer the Complaint and Defendants now intend to vigorously defend this action.  (*Id.*)  Defendants additionally argue that they did not act willfully or in bad faith, but rather were the victims of unfortunate outside circumstances, and that they have meritorious defenses to Claims VI through IX that would render the granting of default judgment particularly harsh.  (*Id.*)

### 3.    Plaintiffs' Reply Memorandum of Law

Generally, in their reply memorandum of law, Plaintiffs make five arguments.  (Dkt. No. 41 [Pls.' Reply Mem. of Law].)  First, Plaintiffs acknowledge that the Magistrate Judge's decision invalidated the entry of default on Claims I through V and thus they are no longer seeking default judgment on those claims.  (*Id.* at 3.)

Second, Plaintiffs argue that Defendants are inappropriately attempting to relitigate issues that have already been decided, including willfulness, prejudice, and the absence of a meritorious defense on Claims VI through IX, and that such attempts should be summarily rejected.  (*Id.* at 3-4.)

Third, Plaintiffs argue that the Court should award $100,000 in liquidated damages for the ten alleged breaches of the Consent Judgment because the liquidated damages provision is not unenforceable. (*Id.* at 4-7.) More specifically, Plaintiffs argue as follows: (a) Defendants' argument that the Consent Judgment was somehow unfair to them in its making is baseless because it was the result of an offer of judgment made by Defendant Warzocha in the previous litigation with the aid of counsel and thus it was Defendants who drafted the provision they now claim is unenforceable; (b) Defendants never sought relief from the Consent Judgment through an appropriate motion and they should have raised their current argument that the amount under the liquidated damages is an impermissible "penalty" when they previously moved to vacate the entry of default; and (c) even if Defendants' argument has not been waived by their failure to raise it previously, that argument is nonetheless meritless because similar damages have been upheld in trademark cases specifically and the Lanham Act allows for statutory damages up to $2 million (which signals that $10,000 per violation is not unenforceable). (*Id.*) Plaintiffs also argue that Defendants' attempt to have all the alleged violations construed as a single violation is baseless and the Consent Judgment specifically allows for recovery for each separate violation. (*Id.*)

Fourth, Plaintiffs argue that the Court should award the full requested attorneys' fees and costs, with the exception of making a four-ninths reduction in the amount of fees sought for pre-default actions (resulting in a reduction of pre-default fees from $14,461.25 to $6,427.22). (*Id.* at 7-11.) Plaintiffs argue that they have incurred, as of the date of the reply (June 18, 2020), and are thus entitled to recover, $90,285.30 in post-default fees regardless of whether those some of those fees related to claims that are not subject to default judgment because (a) a court can condition vacating an entry of default on the defaulting party being required to pay attorneys'

fees, (b) it was Defendants' own delay in filing their motion to vacate the entry of default until just a few days before Plaintiffs' deadline to file a motion for default judgment that caused Plaintiffs' attorneys to engage in work that later proved to be unnecessary as a result of the Court's findings on the motion to vacate the entry of default, and (c) the hourly rates requested are reasonable given the highly specialized nature of trademark law and litigation.  (*Id.*)

Fifth, Plaintiffs argue that the Defendants' self-serving assertions of financial hardship and inability to pay a judgment are not grounds to deny a motion for default judgment, and in fact shows that such a judgment should be granted as soon as possible to allow reasonable recovery before Defendants' assets disappear.  (*Id.* at 11.)

## II.      GOVERNING LEGAL STANDARDS

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant."  *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'"  *Robertson*, 2008 WL 2519894, at *3 (quoting Fed. R. Civ. P. 55[a]).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court."  *Id.*  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment."  *Id.* (citing Fed. R. Civ. P. 55[b][2]).  "When an action presents more than one claim for relief . . . , the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

Pursuant to Second Circuit law, when determining whether to grant a default judgment, the Court must consider three factors: (1) whether the defendant's default was willful; (2)

whether the defendant has a meritorious defense to the Plaintiffs' claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "An unexcused or unexplained failure to provide an answer to the Complaint will itself demonstrate willfulness," as does failing to respond to both a complaint and a subsequent motion for default judgment. *United States v. Silverman*, 15-CV-0022, 2017 WL 745732, at *3 (E.D.N.Y. Feb. 3, 2017) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738-39 [2d Cir. 1998]; *Indymac Bank v. Nat'l Settlement Agency, Inc.*, 07-CV-6865, 2007 WL 4468652, at *1 [S.D.N.Y. Dec. 20, 2007]).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ." *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted). "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc*., 08-CV-1048, 2009 WL 4730700, at *2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]). "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2 (quoting *Alcantara*, 183 F.3d at 155 [citation omitted]). This inquiry "involves two tasks: [1] determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Under N.D.N.Y. L.R. 55.2(a), when requesting an entry of default judgment from the Clerk of the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement showing the principal amount due (not to exceed the amount demanded in the Complaint and giving credit for any payments with the dates of payments), (c) a computation of the interest to the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements claimed, and (f) an affidavit of the moving party or the party's attorney. N.D.N.Y. L.R. 55.2(a).  The appended affidavit must show that (a) the party against whom judgment is sought is not an infant or incompetent person, (b) the party against whom judgment is sought is not in military service, (c) the party against whom judgment is sought has defaulted in appearance in the action, (d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement is justly due and owing and no part has been paid except as set forth in the party's other statement, and (f) disbursements sought to be taxed have been made in the action or will necessarily be made or incurred.  *Id.*

Under N.D.N.Y. L.R. 55.2(b), when moving for an entry of default judgment from the Court, the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an affidavit of the moving party or its attorney setting forth the facts required by N.D.N.Y. L.R. 55.2(a).  N.D.N.Y. L.R. 55.2(b).

## III.   ANALYSIS

After careful consideration, the Court grants Plaintiffs' motion for default judgment on Claims VII and IX for the reasons stated in their memoranda of law.  *See, supra*, Part I.C. of this Decision and Order.  To those reasons, the Court adds the following analysis.

As an initial matter, the Court finds that the only claims that are subject to this motion for default judgment are Claims VI through IX because those are the only claims for which an entry of default by the Clerk of Court remains in effect. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (noting that Fed. R. Civ. P. 55 requires a two-step process, the first step of which is an entry of default from the clerk that constitutes a judicial recognition that the defendant has admitted liability through its failure to defend the action, and the second step of which converts the admission of liability into a final judgment); N.D.N.Y. L. R. 55.2 (noting that, to have either the Clerk or the Court enter a default judgment, the party seeking default judgment must present the Clerk's certificate of entry of default as part of its motion). Indeed, Plaintiffs have recognized that they cannot obtain default judgment on Claims I through V due to the fact that the entry of default as to those claims was vacated. (Dkt. No. 41, at 3 n.1 [Pls.' Reply Mem. of Law].) As a result, the Court will consider only Claims VI through IX on this motion.

### A. Liability

As to whether Defendants' default was willful, the Court notes that Magistrate Judge Baxter and the undersigned both previously found that Defendants' conduct established willfulness. (Dkt. No. 34, at 3-4, ) Specifically, Defendants argued as part of their appeal from Magistrate Judge Baxter's decision that their default was the result of external circumstances, including the death of Defendant Warzocha's brother in Poland, Defendant Slusarczyk's pregnancy, and difficulty finding New York counsel to represent them, arguments that the Court discussed and rejected in detail when denying that appeal. (Dkt. No. 34, at 5, 8-10 [Decision and Order filed May 28, 2020].) Defendants merely recycle these arguments without adding any further compelling explanation. Because Defendants have not presented any new arguments or

information that would cause the Court to doubt its previous finding, the Court finds it appropriate to rely on that previous finding here.  *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) ("The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."); *Oneida Indian Nation of New York v. Cnty of Oneida*, 214 F.R.D. 83, 91 (N.D.N.Y. 2003) (McCurn, J.) (noting that, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, . . . unless cogent and compelling reasons militate otherwise").

As to Defendants' assertion that they have shown the existence of a meritorious defense on Claims VI through IX, the Court rejects Defendants' argument that the 2013 Consent Judgment was ambiguous, which was already raised in their motion to vacate the entry of default and rejected by both Magistrate Judge Baxter and the undersigned.  In particular, Defendants' arguments presented on this issue in their opposition memorandum of law are essentially a verbatim repetition of the arguments they made on their previous motion, arguments that the undersigned rejected in detail when denying Defendants' appeal from Magistrate Judge Baxter's findings.  Thus, the Court finds that these are arguments provide no basis for denying Plaintiffs' motion for default judgment on the relevant claims.[2]

---

[2]    Defendants argue for the first time that they have a meritorious defense because the liquidated damages provision in the Consent Judgments is disproportionate and unenforceable. (Dkt. No. 39, at 25, 29 [Defs.' Opp'n Mem. of Law].)  However, the fact that the liquidated damages provision is unenforceable would not provide a defense in terms of *liability* for a breach of the Consent Judgment; rather, it would merely affect what damages Plaintiffs would be entitled to upon an entry of liability.  The Court will therefore discuss this argument in more detail in conjunction with its analysis of damages.

As to whether Plaintiffs would suffer any prejudice in the absence of default judgment, it is well recognized that "delay alone is not a sufficient basis for establishing prejudice," but rather "'something more is needed' such as when a delay 'thwarts plaintiff's recovery or remedy . . . results in the loss of evidence, creates increased difficulties of discovery, or provides greater opportunity for fraud and collusion.'" *Gunnels v. Teutul*, 19-CV-5331, 2020 WL 3498454, at *3 (S.D.N.Y. June 29, 2020) (quoting *New York v. Green*, 420 F.3d 99, 110 [2d Cir. 2005]). Plaintiffs have argued, based on Defendants' own arguments and evidence about their worsening financial situations, that a delay in granting a proper default judgment could very well in this case severely undermine Plaintiffs' ability to recover damages.  (Dkt. No. 41, at 11 [Pls.' Reply Mem. of Law].)  *See Green*, 420 F.3d 99, 110 (2d Cir. 2005) (finding that it was not clear error for the district court to find prejudice where the state showed that the delay put at risk the state's ability to obtain funds necessary to proceed with its plan for remediating the contaminated site); *First Technology Capital, Inc. v. Airborne, Inc.*, 378 F. Supp. 3d 212, 218 (W.D.N.Y. 2019) (finding that the defendant's apparent insolvency would cause plaintiff to be substantially prejudiced if the motion for default judgment were denied because "without the entry of a default, Plaintiff would be unable to recover for the claims adequately set forth in the Complaint"); *In re FKF 3, LLC*, 501 B.R. 491, 507 (S.D.N.Y. 2013) (finding that prejudice existed based on the fact that the plaintiff's financial situation made it unlikely that plaintiff could satisfy the default judgment itself, much less the interest that would continue to accrue the longer recovery was delayed).  The Court agrees that a further delay would pose a real risk of thwarting Plaintiffs' ability to recover damages from Defendants on the relevant claims.  In any event, the fact that the Court has found that Defendants' default was willful and that they have no meritorious defense to Plaintiffs' claims related to the breaches of the 2013 Consent Judgment

merits default judgment on the relevant claims even if little prejudice has been shown.  *See Kulwa v. Obiakor OB/GYN P.C.*, 12-CV-1868, 2013 WL 504383, at *7 (E.D.N.Y. Feb. 8, 2013) ("A finding of willfulness can, on its own, support a finding of good cause [to] support entry of default judgment.").  As already discussed, the Court has already found that Defendants' conduct was willful and that Defendants lack any meritorious defense to Claims VI through IX; and thus the Court finds that the strength of those two factors makes up for any weakness in the showing of prejudice in this case.

Lastly, the Court finds that Plaintiffs have sufficiently alleged facts that, if taken as true, show that they are entitled to relief on their claims related to the ten alleged breaches of the 2013 Consent Judgment for all the reasons stated in Plaintiffs' memorandum of law.  (Dkt. No. 17, Attach. 41, at 20-23 [Pls.' Mem. of Law]; Dkt. No. 17, Attach. 26, at ¶¶ 41-74 [Pls.' Compl.].)

For all of the above reasons, the Court finds that Plaintiffs have sufficiently shown that Defendants are liable on Claims VII and IX of the Complaint for the purposes of default judgment.

**B.  Damages**

As an initial matter, the Court denies without prejudice Plaintiffs request for an injunction because that remedy was based on claims that are not under consideration on this motion for default judgment.  (Dkt. No. 17, Attach. 41, at 23-24 [Pls.' Mem. of Law] [requesting a permanent injunction specifically to enjoin Defendants from infringing and diluting Plaintiffs' "Black Ice" trademarks, the subject of Claims I through V].)  The Court similarly denies without prejudice Plaintiffs request for damages related to sale of products infringing Plaintiffs' "Black Ice" trademarks because the claims related to those trademarks are not under consideration here as already discussed.

14

The two remaining bases for damages are (1) Plaintiffs' request for $100,000 in liquidated damages pursuant to the liquidated damages provision in the 2013 Consent Judgment (comprised of $10,000 for each of the ten separate violations of the Consent Judgment alleged in the Complaint), and (2) Plaintiffs request for attorneys' fees and disbursements in the amount of $96,712.52.  (Dkt. No. 17, Attach. 41, at 26-28 [Pls.' Mem. of Law]; Dkt. No. 17, Attach. 25, at ¶¶ 41 [Orbach Decl.]; Dkt. No. 41, Attach. 1 [Orbach Decl.].)

In the 2013 Offer of Settlement that Plaintiffs accepted, it is stated that, "[i]f either Defendant breaches the terms of this Judgment, Defendants shall pay to CFC $10,000 per violation of this Judgment, $1 per infringing product produced or distributed after the date of this Judgment, and Plaintiffs' costs and attorneys fees in enforcing the Judgment."  (Dkt. No. 17, Attach. 29, at 4.)  This portion of the agreement was memorialized in the Consent Judgment. (Dkt. No. 17, Attach. 28, at 3.)

As an initial matter, the Court rejects Defendants' baseless assertion that the Consent Judgment was unfairly imposed on them and was not the result of an arms-length negotiation between sophisticated parties.  As Plaintiffs point out, it was Defendant Warzocha who made the offer of settlement to Plaintiffs that resulted in the 2013 Consent Judgment, and that offer of settlement contained the exact language that Defendants now argue is somehow unfair to them; Defendants can hardly complain that a term has been imposed upon them against their will when they are the ones who wrote that very term and included it in their offer of settlement. Regardless of whether Defendants felt obligated to offer a settlement on those terms because of their personal worries about their business, such consideration does not change the fact that Defendants chose to include that term in their offer.  Additionally, to say that Defendants are not "sophisticated" is a stretch, given that Defendants had been involved in legal proceedings

(including a previous Consent Judgment in 2003) with Plaintiffs for similar issues, and thus were at least somewhat familiar with the nature of such proceedings and settlements. Defendants have offered nothing but conclusory assertions that are insufficient to show that there is a basis for finding that the liquidated damages provision of the Consent Judgment is unconscionable or against public policy based on the circumstances under which it was entered into.

Nor is the Court convinced by Defendants' arguments that the liquidated damages provision is unenforceable or disproportionate. Notably, although Defendants argue that Plaintiffs have not shown any injury, the Complaint clearly alleges that Defendants' use of Plaintiffs' trademarks in violation of the Consent Judgment presents a strong risk of consumer confusion or otherwise attempts to capitalize on Plaintiffs' trademarks in a manner that has the potential to harm Plaintiffs' sales and reputation. Defendants essentially argue that the alleged violations of the Consent Judgment (i.e., using the term "little tree" in hidden text on their website, using the "term car freshener" on their website, and using prohibited terms in social media hashtags) could not warrant damages of $10,000 per violation as indicated in the liquidated damages provision because Plaintiffs have not shown that any consumer was confused or that they suffered any actual harm as a result of these specific uses (and, in the case of the hidden text, whether any consumers actually saw those uses). However, an injured party need not prove a specific amount of harm or injury to be entitled to a specified amount of liquidated damages; rather, liquidated damages are by their nature "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of a breach of the agreement." *Agerbrink v. Model Service LLC*, 196 F. Supp. 3d 412, 416 (S.D.N.Y. 2016) (quoting *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 393 N.Y.S.2d 365 [1977]). Indeed, "the parties may agree upon damages in advance when the liquidated amount

'is a reasonable measure of the anticipated probable harm,' and the probable actual loss from a breach is difficult to estimate or ascertain at the time the contract is executed." *Rattigan v. Commodore Int'l Ltd.*, 739 F. Supp. 167 (S.D.N.Y. 1990) (quoting *Truck Rent-A-Ctr.*, 393 N.Y.S.2d at 369) (noting also that "[t]he reasonableness of the liquidated damages and the certainty of actual damages both must be measured as of the time the parties enter into the contract, not as of the time of the breach").  Because reasonableness of the liquidated damages provision must be assessed at the time the parties entered into the contract, the fact that Plaintiffs have not shown actual consumer confusion or other concrete harm related to these specific violations is not a basis for finding the liquidated damages provision to be unreasonable and thus unenforceable.  Notably, Defendants have not offered any argument pertaining to how an amount of $10,000 per violation of the Consent Judgment was unreasonable at the time the parties entered into the Consent Judgment, and thus they have not met their burden to establish that the liquidated damages provision constitutes an unenforceable penalty.  *See Rattigan*, 739 F. Supp. at 170 ("[D]efendant has the burden of proving that the liquidated damage clause to which it freely contracted to is, in fact, a penalty.").

The Court additionally does not agree that the liquidated damages provision results in relief that is so disproportionate as to be purely punitive in nature.  Notably, the parties have been engaged in multiple instances of litigation related to Defendants' (and their predecessors') alleged ongoing infringement of Plaintiffs' trademarks spanning more than a decade. Defendants also ignore the harm to Plaintiffs trademarks that inherently occurs as a result of usages that are banned by the Consent Judgment.  Defendants do little more than make a conclusory argument that the liquidated damages are disproportionate to what they view as miniscule violations that have not caused major damages.  However, as discussed above, it is not

the actual harm suffered that matters, but rather the type of harm anticipated at the time the contract was entered into.  Plaintiffs do not provide any evidence or legal authority for their argument that the amount of liquidated damages here would be disproportionate to any injury that was contemplated by the parties at the time they entered into the Consent Judgment.  The Court therefore finds that, by the plain terms of the Consent Judgment, Plaintiffs are entitled to $10,000 per violation of the Consent Judgment, for a total of $100,000.

As to Plaintiffs' entitlement to attorneys' fees, the 2013 Consent Judgment specifically states that, per the agreement of the parties, "if either Defendant breaches the terms of this Judgment, Defendants shall pay to CFC . . . Plaintiffs' costs and attorneys fees in enforcing the Judgment."  (Dkt. No. 17, Attach. 28, at 3.)  Defendants do not appear to challenge Plaintiffs' assertion that the Consent Judgment forms a valid basis for imposing an award of attorneys' fees. Thus, the Court finds that Plaintiffs are entitled to recover their costs and attorneys' fees pursuant to the plain terms of the Consent Judgment.  *See Regan v. Conway*, 768 F. Supp. 2d 412, 415-16 (E.D.N.Y. 2011) ("In federal practice, the general rule is that each party bears his or her own attorneys fees.  However, the parties may agree by contract to permit recovery of attorneys' fees. If the contract is valid under state law, the federal court will enforce the contract as to attorneys' fees.").

As an initial matter, the Court finds that the hourly rates requested by Plaintiffs are, despite their counsel's skill and experience, somewhat excessive.  Plaintiffs request a rate of $420-$440 for work performed by Attorney Orbach (who has more than 25 years of litigation experience), a rate of $220-$260 for work performed by Attorney Magley (an associate with approximately five years of experience), and a rate of $205 for work performed by Paralegal Calapricio.  (Dkt. No. 17, Attach. 25, at ¶ 40 [Orbach Decl.].)  Plaintiff also requests a rate of

$210 for the work of Erin VanMarter, who is described as "a project manager in our e-discovery and practice support group who assisted in the redaction of documents for electronic filing in this case"; Attorney Orbach does not indicate what Ms. VanMarter's credentials or experience is, or even whether she is an attorney or paralegal.  (Dkt. No. 41, Attach. 1, at ¶ 15 [Orbach Decl].) Cases in this district have found reasonable rates to generally be $275-$350 for experienced partners, $165-$200 for junior associates, and $90 for paralegals.  *See Johnson v. Mauro*, 16-CV-0622, 2019 WL 5842765, at *5 (N.D.N.Y. Nov. 7, 2019) (Sannes, J.) (collecting cases).  The Court therefore finds that any attorneys' fees that are ultimately granted would be at the rates that have been generally found to be reasonable in this District rather than the much higher rates Plaintiff requests.  In particular, in accordance with similar findings rendered by this Court in the recent past, the Court finds that Attorney Orbach's work is subject to a rate of $325 due to his considerable skill and experience, that Attorney Magley's work is subject to a rate of $185 based on her significant skill and experience, and that Paralegal Calapricio's work is (despite his considerable experience) subject to the standard rate of $90 (due to the relative inflexibility of such rates in the District historically).  (Dkt. No. 17, Attach. 25, at ¶ 40 [Orbach Decl.].) Unfortunately, work by Ms. VanMarter (who has not been described as a paralegal) must be excluded due to Plaintiffs' failure to provide any information that would allow this Court to determine the proper rate for her services.

In their reply memorandum of law, Plaintiffs accede to a reduction in the total fees prior to Defendants' default in this case such that they now only seek four-ninths of those fees.  Based on the contemporaneous time records submitted by Plaintiffs, Plaintiffs expended the following amounts of time for the period between August 29, 2019, and November 26, 2019 (approximately the time of Defendants' default): (a) 30.4 hours by Attorney Orbach; (b) 3.6

hours by Attorney Magley; and (c) 1.6 hours by Paralegal Calapricio.  (Dkt. No. 17, Attachs. 38,

39.)  Applying the rates found above, the base amount of attorneys' fee for the pre-default period

is $10,690.00 ($9,880.00 for Attorney Orbach, $666.00 for Attorney Magley, and $144.00 for

Paralegal Calapricio).  Applying the consented-to reduction, Plaintiffs are entitled to $4,751.11

in attorneys' fees for this period.

Based on the contemporaneous time records, Plaintiffs also expended the following

amounts of time since December 3, 2019: (a) 142.9 hours for Attorney Orbach; and (b) 88.4

hours for Attorney Magley.  (Dkt. No. 17, Attachs. 38, 39; Dkt. No. 41, Attach. 2.)  In opposition

to Plaintiffs' motion, Defendants argue both that these amounts should be reduced because they

include work done related to claims that are not subject to default judgment as a result of

Defendants' successful motion to vacate part of the Clerk's entry of default and because many of

the hours expended by Plaintiffs were unnecessary given that the Local Rules do not require a

party moving for default judgment to submit a memorandum of law.  (Dkt. No. 39, at 7-11

[Defs.' Opp'n Mem. of Law].)

As an initial matter, the Court finds that it would not be appropriate in this case to deduct

time spent on counts not subject to default when Plaintiffs were preparing their default judgment

motion because, at the time they filed that motion, the Clerk's entry of default as to those claims

had not yet been vacated.  *See Deferio v. Bd. of Tr. of State Univ. of New York*, 11-CV-0563,

2014 WL 295842, at *6 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.) (noting that, in considering

whether an award of attorneys' fees is reasonable, "[t]he court should also consider whether, at

the time the work was performed, a reasonable attorney would have engaged in similar time

expenditures") (internal quotation marks omitted).  Nor does the Court find merit in Defendants'

argument that the entire portion of the time spent on the memorandum of law should be deducted

because such memorandum was "unnecessary" under the Local Rules, given that memoranda are routinely submitted in motions for default judgment, regardless of whether they are strictly required (and given the memorandum's utility in this particular case).

The Court does, however, find that the hours attributable to the preparation of the motion for default judgment should be reduced as somewhat excessive.  In particular, the Court's review of the contemporaneous time records indicate that Attorney Orbach spent approximately 52.5 hours on tasks related to preparation of the default judgment motion and accompanying memorandum of law, while Attorney Magley spent an additional 41.4 hours on that motion and memorandum of law.  (Dkt. No. 17, Attachs. 38, 39; Dkt. No. 41, Attach. 2.)  Given that there appears to have been nothing unusually complicated about the issues presented in the motion for default judgment or the accompanying 24-page memorandum (and given that much of the memorandum was based on factual allegations previously developed in the Complaint), it is unclear to this Court why 93.9 hours of preparation was required by two attorneys, one of whom is highly skilled and experienced.  The Court therefore finds that these hours specifically should be reduced by 50-percent, resulting in 26.25 hours for Attorney Orbach and 20.7 hours for Attorney Magley (or 46.95 hours total).

Similarly, the Court also finds a reduction appropriate in the amount of time spent on the reply memorandum of law related to the motion for default judgment.  The contemporaneous records show that Plaintiffs have claimed 24.8 hours by Attorney Orbach and 16 hours by Attorney Magley related to work on this reply, for a total of 40.8 hours.  (Dkt. No. 17, Attachs. 38, 39; Dkt. No. 41, Attach. 2.)  A review of the reply memorandum of law in question reveals that it is 10 pages long, approximately half of which is devoted to recovery of attorneys' fees (as are the attachments submitted with the reply memorandum of law).  The Court finds that 40.8

hours spent by two attorneys on this document is somewhat unreasonable.  Under the circumstances, the Court finds that a 50-percent reduction should also be applied to these hours, resulting in 12.4 hours for Attorney Orbach and 8 hours for Attorney Magley (or 20.4 hours total).

With these adjustments, the post-default totals are as follows: (a) 104.25 hours for Attorney Orbach; and (b) 59.7 hours for Attorney Magley.  At the rates applied above, this results in a total of post-default attorneys' fees of $44,925.75 ($33,881.25 for Attorney Orbach and $11,044.50 for Attorney Magley).  Thus, the total amount of attorneys' fees to which Plaintiffs are entitled on this motion (including both the pre- and post-default amounts) is $49,676.86.

Plaintiffs additionally seek recovery of disbursements made for the case filing fee, telephone charges, postage charges, and computerized research in the amount of $3,795.50 ($400.00 for the filing fee, $12.15 for long-distance telephone charges, $123.25 for postage costs, and $3,260.10 for computerized research).  (Dkt. No. 17, Attach. 38, at 9, 12, 19; Dkt. No. 17, Attach. 39, at 6; Dkt. No. 41, Attach. 2, at 7, 12, 19, 29.)  Defendants do not seem to challenge these costs.  The Court finds that these costs are generally recoverable and reasonable. *See In re Amaranth Natural Gas Commodities Litig.*, 07-CV-6377, 2012 WL 2149094, at *1 (S.D.N.Y. June 11, 2012) (granting as recoverable and reasonable routine expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel); *Rostolder v. Life Energy and Tech. Holdings, Inc.*, 03-CV-3375, 2006 WL 5838184, at *8 (E.D.N.Y. Sept. 20, 2006) (finding costs including long-distance phone service, faxes, postage, travel, court-tracking fees, ECF charges, photocopying, court reporting, and transcripts were reasonable and

compensable).  All of these costs are documented in the evidence provided and were billed to Plaintiffs.

Based on the above, the Court finds that Plaintiffs are entitled to a total of $53,472.36 in attorneys' fees and costs on this motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion (Dkt. No. 17) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that the Clerk of Court is directed to enter a default judgment in Plaintiffs' favor on Counts VII and IX against Defendants in the amount of **ONE HUNDRED FIFTY THREE THOUSAND FOUR HUNDRED SEVENTY TWO DOLLARS AND THIRTY SIX CENTS ($153,472.36).**[3]

Dated: September 28, 2020
         Syracuse, NY

Glenn T. Suddaby
Chief U.S. District Judge

---

[3]      This amount consists of the following: (1) $100,000 in liquidated damages; (2) $49,676.86 in attorneys' fees; and (3) $3,795.50 in costs.