UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAR-FRESHNER CORPORATION; and JULIUS
SAMANN LTD,

                          Plaintiffs,
                                                              5:19-CV-1158
v.                                                            (GTS/ATB)

SCENTED PROMOTIONS, LLC d/b/a Scent USA;
PAULINA SLUSARCZYK; and SLAWOMIR M.
WARZOCHA, a/k/a Michael Warzocha a/k/a
Michael Midas,

                          Defendants.
_____

APPEARANCES:                                OF COUNSEL:

BOND, SCHOENECK & KING, PLLC                LIZA R. MAGLEY, ESQ.
  Counsel for Plaintiffs                    LOUIS ORBACH, ESQ.
One Lincoln Center
Syracuse, NY 13202

THE BILICKI LAW FIRM, P.C.                  BYRON A. BILICKI, ESQ.
  Counsel for Defendants
1285 North Main Street
Jamestown, NY 14701

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this trademark infringement action filed by Car-Freshner

Corp. and Julius Samann LTD ("Plaintiffs") against Scented Promotions, LLC, Paulina

Slusarcyzk, and Slawomir M. Warzocha ("Defendants"), are the following two motions: (1)

Defendants' motion to dismiss Claims I through V of Plaintiff's Complaint for lack of personal

jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and (2) Plaintiffs' motion for an Order requiring

Defendants to post a bond in the amount of $53,500 to ensure payment of Plaintiffs' costs in

defending against Defendants' appeal from the default judgment entered by this Court on September 28, 2020. (Dkt. Nos. 33, 55.) For the reasons set forth below, Defendants' motion to dismiss for lack of personal jurisdiction is denied, and Plaintiffs' motion for a bond is denied as moot.

## I.      RELEVANT BACKGROUND

### A.      Plaintiffs' Complaint and the Relevant Procedural History

Generally, in their Complaint, Plaintiffs assert the following nine claims: (I) a claim of federal infringement of a registered trademark; (II) a claim of federal trademark infringement and unfair competition; (III) a claim of federal trademark dilution; (IV) a claim of trademark dilution under N.Y. Gen. Bus. L. § 360-1; (V) a claim of common law trademark infringement and unfair competition; (VI) a claim that Defendants violated the Court's 2003 Consent Judgment; (VII) a claim that Defendants violated the Court's 2013 Consent Judgment; (VIII) a claim of breach of contract related to Defendants' violation of the 2003 Consent Judgment; and (IX) a claim of breach of contract related to Defendants' violation of the 2013 Consent Judgment. (Dkt. No. 1 [Pls.' Compl.].)

On December 5, 2019, the Clerk of the Court entered default against Defendants at the request of Plaintiffs. (Dkt. Nos. 10, 11.) On January 20, 2020, Defendants filed a motion to vacate that entry of default. (Dkt. No. 16.) On March 12, 2020, Chief U.S. Magistrate Judge Andrew T. Baxter granted Defendants' motion in part and denied it in part, finding that the entry of default should be vacated as to Claims I through V of the Complaint, but should not be vacated as to Counts VI through IX of the Complaint. (Dkt. No. 23.) On April 27, 2020, Defendants appealed that decision to this Court. (Dkt. No. 26.) On May 28, 2020, the undersigned denied Defendants' appeal and affirmed Magistrate Judge Baxter's decision. (Dkt.

No. 34.)  On September 28, 2020, the Court entered default judgment against Defendants and in favor of Plaintiffs on Counts VII and IX of the Complaint.  (Dkt. No. 47.)  On October 28, 2020, Defendants filed a notice of appeal from that default judgment to the Second Circuit.  (Dkt. No. 53.)

### B.     Parties' Briefing on Defendants' Motion to Dismiss

#### 1.     Defendants' Memorandum of Law

Generally, in their motion to dismiss Claims I through V, Defendants make two arguments.  (Dkt. No. 33, Attach. 1, at 6-14 [Defs.' Mem. of Law].)  First, Defendants argue that the Court lacks general personal jurisdiction over any of the Defendants for the following reasons: (a) Defendant Scented Promotions is incorporated in and has its principle place of business in Nevada; and (b) Scented Promotions made only a single sale to a customer in New York in 2019, and that sale did not include any of the allegedly infringing Black Ice products. (*Id.* at 6-8.)

Second, Defendants argue that the Court also lacks specific personal jurisdiction over any of the Defendants for the claims here because (a) the only alleged sale of Black Ice air fresheners in New York was orchestrated by Plaintiffs, and (b) the fact that Defendant Scented Promotions' websites are interactive (i.e., some of them allow customers to place orders through the websites) is not a sufficient basis for specific personal jurisdiction.  (*Id.* at 8-14.)  More specifically, Defendants argue that a plaintiff cannot manufacture jurisdiction by orchestrating a sale in the relevant forum to create contacts with that forum.  (*Id.* at 10-11.)  Defendants also argue that a website is not a basis for personal jurisdiction merely because individuals from New York can access it, but rather it must be relevant to the commercial activity with New York; here, Defendants had only a single sale to a customer in New York in 2019 (other than the sale to

3

Plaintiffs' agent) and that sale was not for a Black Ice product.  (*Id.* at 11-13.)  Lastly, Defendants argue that neither of the individual Defendants has ties to New York that would support personal jurisdiction separate from Defendant Scented Promotions.  (*Id.* at 13-14.)

### 2.    Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiffs make three arguments.  (Dkt. No. 35, at 10-25 [Pls.' Opp'n Mem. of Law].)  First, Plaintiffs argue that they have made at least a prima facie showing of the Court's personal jurisdiction over Defendants.  (*Id.* at 10-22.)  More specifically, Plaintiffs argue that Defendants have sufficient contacts with New York to show that they availed themselves of that forum, including (a) multiple interactive websites that advertise and sell air fresheners to New York customers (including Black Ice air fresheners), (b) a record of deliveries of hundreds of air fresheners to customers in New York, including to companies in Rochester, Queens, and Syracuse, (c) the delivery of air fresheners to Plaintiffs' agent, (d) advertisements in a publication that was distributed in cities and towns in New York State, (e) promotion of Black Ice air fresheners on Instagram (to which New York customers would have access), and (f) indications that another family member employed by Defendant Scented Promotions might have lived in New York City while serving in that employment capacity.  (*Id.*)  Plaintiffs additionally argue that (a) the fact that Plaintiffs initiated one of the New York purchases does not defeat jurisdiction because Defendants still purposely availed themselves of the opportunity to do business in New York by conducting that transaction, (b) even a single sale is sufficient to establish that Defendants purposely availed themselves of transacting business in New York, (c) the combination of sales to New York customers and their interactive websites is sufficient to establish personal jurisdiction under decisions of various

district courts and the Second Circuit, and (d) Magistrate Judge Baxter has already found that Plaintiffs likely made a prima facie showing of personal jurisdiction and that such jurisdiction would likely be imputed to the two individual Defendants for their actions on behalf of Defendant Scented Promotions.  (*Id.*)

Second, Plaintiffs argue that due process is satisfied by the exercise of personal jurisdiction over Defendants because the prevailing legal precedent indicates conduct meeting the requirements of New York's long-arm statute generally also complies with the requirements of due process.  (*Id.* at 23-24.)

Third, Plaintiffs argue that, in the alternative, if the Court finds that it cannot conclude that it has personal jurisdiction over Defendants based on the existing allegations and evidence, the Court should permit Plaintiffs to conduct jurisdictional discovery before deciding the merits of Defendants' motion.  (*Id.* at 24-25.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiffs' opposition, Defendants make two arguments.  (Dkt. No. 38, at 4-13 [Defs.' Reply Mem. of Law].)  First, Defendants argue that any prima facie showing of personal jurisdiction that Plaintiffs had made previously has been rebutted, and Plaintiffs have not furnished any further relevant evidence.  (*Id.* at 4-12.)  More specifically, Defendants argue that (a) a single orchestrated sale of Black Ice products or a single sale of non-infringing products are not sufficient to create personal jurisdiction under New York's long-arm statute and Magistrate Judge Baxter already rejected many of Plaintiffs' arguments, (b) the new evidence that Plaintiffs allege in their response does not establish personal jurisdiction because (i) the non-party family member did not live in New York while working for Defendant Scented Promotions and did not conduct business in New York for the company, (ii) other alleged sales to New York

customers were not for Black Ice products, and thus Plaintiffs' claims do not arise from any of these transactions, and (iii) many of these sales are so remote that they should not be considered, and (c) the totality of the alleged transactions with New York (both of Black Ice and of non-Black Ice products) are so miniscule that they do not create personal jurisdiction. (*Id.*)

Second, Defendants argue that Plaintiffs have not established that they are entitled to jurisdictional discovery, given that their prima facie case has been rebutted and they have not identified specific information they expect to uncover through discovery. (*Id.* at 12-13.)

### 4.    Plaintiffs' Supplemental Submission

Generally, in a supplemental submission that they were granted leave to file, Plaintiffs make three arguments. (Dkt. No. 51, at 1-6.) First, Plaintiffs argue that there is evidence of at least five sales to New York customers (including Plaintiffs' agent) for Black Ice products, and at least 141 sales of air fresheners in general to 64 individual New York customers, and that these sales sufficiently establish that Defendants purposefully availed themselves of conducting business in New York. (*Id.* at 1-3.)

Second, Plaintiffs argue that there is personal jurisdiction over Defendant Warzocha because he is the founder and one-time sole member of Defendant Scented Promotions, he was involved in running the company, advertising, sales, and customer service, and there is no evidence that Defendant Scented Promotions adhered to corporate formalities that would justify shielding him from personal liability for his actions taken on behalf of Defendant Scented Promotions. (*Id.* at 3-5.)

Third, Plaintiffs argue that there is also personal jurisdiction over Defendant Slusarczyk because she has control over Defendant Scented Promotions' daily operations, oversees production, advertisement, sales, and shipments of product, prepares all invoices, and provides

customer service (including to New York customers); she also has testified that she advertises Black Ice to customers and has purchased the Black Ice fragrance oil used in the air fresheners from a New York company.  (*Id.* at 5-6.)

> ### 5.    Defendants' Supplemental Submission

Generally, in their supplemental submission, Defendants make four arguments.  (Dkt. No. 52, at 1-7.)  First, Defendants argue that its website should not be considered a basis for personal jurisdiction because Defendant Scented Promotions does not generally sell air fresheners directly to buyers through its websites, but rather receives orders from advertisers and then ships those orders directly to the buyers.  (*Id.* at 1-2.)

Second, Defendants argue that their use of the Black Ice trademark on any purchase orders, proofs, invoices, or similar documents, as well as a single documented use of that trademark on an air freshener at a customer's direction, are not actionable and thus cannot be used for the purposes of establishing personal jurisdiction.  (*Id.* at 3-4.)

Third, Defendants argue that none of the alleged sales of non-infringing products are relevant, and the Court should not rely on the finding in *Chole v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir. 2010), that such sales can be relevant because that case conflicts with the Supreme Court's more recent decision in *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).  (*Id.* at 4-6.)

Fourth, Defendants argue that, because there is no personal jurisdiction over Defendant Scented Promotions, there is also no personal jurisdiction over the two individual Defendants. (*Id.* at 6-7.)

> ### C.    Parties' Briefing on Plaintiffs' Motion for a Bond

> ### 1.    Plaintiffs' Memorandum of Law

Generally, in their motion, Plaintiffs argue that the Court should order Defendants to post a bond pursuant to Fed. R. App. P. 7 to ensure payment of Plaintiffs' attorneys' fees and costs related to Defendants' pending appeal to the Second Circuit from the Court's Order granting default judgment on some of Plaintiffs' claims.  (Dkt. No. 55, Attach. 4.)  More specifically, Plaintiffs argue as follows: (a) the Consent Judgment between the parties provides for attorneys' fees that Plaintiffs might incur in defending against Defendants' appeal; (b) evidence shows that Defendants are financially able to post a bond; (c) Defendants' past obstructionist conduct and evidence of worsening financial circumstances also suggests that there is a risk that Defendants will not pay Plaintiffs' attorneys' fee and costs if Defendants lose on their appeal; (d) Defendants' appeal lacks merit; and (e) Defendants' history of bad faith conduct also warrants a bond.  (*Id.* at 6-10.)  Plaintiffs seek a bond in the amount of $53,500, which is the approximate amount of attorneys' fees and costs that the Court awarded them for securing the default judgment underlying the appeal.  (*Id.* at 10-11.)

### 2.    Defendants' Response Memorandum of Law

In response to Plaintiffs' motion, Defendants state that they do not oppose the posting of a bond pending their appeal, and that they have in fact communicated to Plaintiffs their intention and efforts to secure such a bond.  (Dkt. No. 56, at 1-2.)  Defendants indicate that they have received conditional approval from U.S. Bank for a Secured Cash Flow Manager in the amount of $180,000 pending additional documents, and that they are in the process of gathering and providing those documents to U.S. Bank.  (*Id.*)

## II.    GOVERNING LEGAL STANDARDS

### A.  Legal Standards Governing a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes motions to dismiss on the basis of lack of personal jurisdiction over a defendant.  "On a Rule 12(b)(2) motion . . . the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996).  "In reviewing a Rule 12(b)(2) motion, 'a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists.'"  *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting *Greatship (India) Ltd. v. Marine Logistics Solutions (Marsol) LLC*, 11-CV-0420, 2012 WL 204102, at *2 [S.D.N.Y. Jan. 24, 2012]).

"Where . . . the issue of personal jurisdiction 'is decided . . . without discovery, the plaintiff need show only a prima facie case' of jurisdiction on a motion under Rule 12(b)(2)." *Bonkowski v. HP Hood LLC*, 2016 WL 4536868, at *1 (E.D.N.Y. Aug. 30, 2016) (quoting *Volkswagenwerk Akiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 [2d Cir. 1984]); *see Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (stating that courts require that, "[a]t this stage of the proceedings," a plaintiff make a "prima facie showing that jurisdiction exists").  Plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citing *Chloe*, 616 F.3d at 163); *see Troma*, 729 F.3d at 217 (noting that, to survive a motion to dismiss for lack of personal jurisdiction, the allegations in the complaint, when taken as true, must be "legally sufficient allegations of jurisdiction").  To make this prima facie showing, a plaintiff must demonstrate a statutory basis for personal jurisdiction over the defendant, and that the Court's exercise of jurisdiction over the defendant is in accordance with constitutional due process principles.  *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) (citing

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 [2d Cir. 2012]); *see DeLorenzo v. Viceroy Hotel Grp.*, 757 F. App'x. 6, 8 (2d Cir. 2018) ("On a motion to dismiss for lack of personal jurisdiction, a district court must first 'determine whether there is jurisdiction over the defendant under the relevant forum state's laws.'").

In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to Plaintiff, and all doubts are to be resolved in Plaintiff's favor. *Bonkowski*, 2016 WL 4536868, at *1.  Plaintiff's allegations must provide "factual specificity necessary to confer jurisdiction." *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998).  Conclusory statements, without any supporting facts, are insufficient. *Jazini by Jazini*, 148 F.3d at 185.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 [1986]).  Moreover, "where a defendant 'rebuts [a plaintiff's] unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiff[] do[es] not counter that evidence—the allegation may be deemed refuted.'" *Leroi, Inc. v. Tran Source Logistics, Inc.*, 15-CV-0565, 2016 WL 4997228, at *4 (N.D.N.Y. Sept. 19, 2016) (Suddaby, C.J.).

"It is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Schukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 [2d Cir. 2003]).  Thus, jurisdictional discovery is appropriate when the party has made a 'colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Leon*, 992 F. Supp. 2d at 194.  However, "[w]here [a plaintiff does] not establish a prima facie case that

the district court has jurisdiction over the defendant, the district court does not err in denying

jurisdictional discovery." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19

(2d Cir. 2015) (citing *Jaznini by Jazini*, 148 F.3d at 186 [2d Cir. 1998]).

    **B.**  Legal Standards Governing Personal Jurisdiction Under New York Law

        **1.**  General Personal Jurisdiction Under N.Y. C.P.L.R. § 301

    "[A] corporation is subject to personal jurisdiction under CPLR § 301 with respect to any

cause of action, arising or not arising out of contacts with New York, if a company 'has engaged

in such a continuous and systematic course of doing business [in New York] that a finding of its

presence [in New York] is warranted.'" *DeLorenzo*, 757 F. App'x at 8 (quoting *Sonera Holding

B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 [2d Cir. 2014]).  "Due process further requires

that a foreign corporation be subject to general jurisdiction only if its contacts are so 'continuous

and systematic,' judged against the corporation's national and global activities, that it is

'essentially at home' in the state." *DeLorenzo*, 757 F. App'x at 8 (quoting *Daimler AG v.

Bauman*, 571 U.S. 117, 138-39 [2014]).  "Aside from 'an exceptional case,' a corporation is at

home (and thus subject to general jurisdiction, consistent with due process) only in a state that is

the company's formal place of incorporation or its principle place of business." *DeLorenzo*, 757

Fed. App'x at 8 (quoting *Daimler AG*, 571 U.S. at 139 & n.19).

        **2.   Specific Personal Jurisdiction Under N.Y. CPLR § 302(a)**

    Under CPLR § 302(a), there are four ways in which a plaintiff can establish the existence

of specific personal jurisdiction over a non-domiciliary or his executor or administrator: (1)

where the non-domiciliary transacts any business within the state or contracts anywhere to

supply goods or services in the state; (2) where the non-domiciliary commits a tortious act within

the state, except as to a cause of action for defamation of character arising from the act; (3)

where the non-domiciliary commits a tortious act without the state that causes injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) the non-domiciliary owns, uses, or possesses any real property situated within the state.  N.Y. CPLR § 302(a).

Under CPLR § 302(a)(1) specifically, a plaintiff must establish that (a) the defendant transacted business within the state, and (b) the claim asserted arises from that business activity. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).  "[C]ourts have explained that section 302 'is a single act statute and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'"  *Chloe*, 616 F.3d at 170 (quoting *Kreutter v. McFadden Oil Corp.*, 527 N.Y.S.2d 195 [N.Y. 1988]).  "[J]urisdiction under [Section] 302(a)(1) is not determined by the quantity of a defendant's contacts with New York, but by the quality of those contacts when viewed in the totality of the circumstances."  *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 22 (E.D.N.Y. 2016) (citing *Fischbarg v. Doucet,* 9 N.Y.3d 375, 380 [2007]).

As to whether the defendant transacted business in the state, the defendant "must purposefully 'avail itself of the privilege of conducting activities within the forum State.'" *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*, 307 F. App'x 479, 481 (2d Cir. 2008) (quoting *Fischbarg*, 9 N.Y.3d at 380).  In assessing whether the defendant has sufficient contacts with the forum, the Court must look "to the totality of Defendants' contacts with the forum,"

rather than assessing whether there is a single event of sufficient strength. *Chloe*, 616 F.3d at 164 (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 [2d Cir. 2005]).

As to whether the claim arises from the defendant's business activity, "section 301(a)(1) does not require a causal link between the defendant's New York business activity and a plaintiff's injury.  Instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'"  *Licci ex rel. Licci*, 732 F.3d at 168-69 (quoting *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 341 [N.Y. 2012]).  Notably, whether a plaintiff's claim arises from its New York contacts depends upon "the nature and elements of the particular cause of action pleaded," and, "where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute."  *Licci ex rel. Licci*, 732 F.3d at 169.

### 3.  Due Process

After determining that personal jurisdiction is appropriate under the long-arm statute, the Court must also consider whether the exercise of that jurisdiction would comport with due process.  "This analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry."  *Chloe*, 616 F.3d at 164.  For the minimum contacts inquiry, the Court must determine "whether the defendant has sufficient contacts with the forum to justify the court's exercise of personal jurisdiction," which involves looking to "the totality of the Defendant's contacts with the forum state."  *Id.*  Of note, the requirement in the New York long-arm statute that the defendant purposefully avail itself of the privilege of conducting activities in New York indicates that a finding of personal jurisdiction typically leads to a finding that sufficient minimum contacts exist because the analyses are essentially the same.  *See Chloe*, 616

F.3d at 171 ("We conclude that assertion of personal jurisdiction over Ubaldelli comports with due process for the same reasons that it satisfies New York's long-arm statute[;] [n]amely, by offering bags for sale to New York consumers on the Queen Bee website and by selling bags . . . to New York customers, Ubaldelli 'purposefully availed himself of the privilege of conducting activities within the forum State."); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302[a] meets due process requirements.").

For the reasonableness inquiry, the Court must determine whether the exercise of personal jurisdiction "comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloe*, 616 F.3d at 164.  In determining whether an exercise of personal jurisdiction is reasonable, the Court must consider the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 164-65 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 133-14 [1987]).

"[T]he exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry," although "it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 165 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 [1985]).

### C.  Legal Standard Governing Motion for a Bond

Rule 7 of the Federal Rules of Appellate Procedure allows a district court to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  Fed. R. App. P. 7.  "Costs" in Fed. R. App. P. 7 includes attorneys' fees "where the cause of action under which the suit at issue is brought so allows, but not otherwise."  *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 25 (2d Cir. 2018).  "In determining whether an appeal bond is appropriate, district courts must consider the following factors: (1) the financial ability of the appellants to post the bond; (2) the risk of the appellants' non-payment if the appeal is unsuccessful; (3) the merits of the appeal; and (4) whether the appellants have shown any bad faith or vexatious conduct."  *Vanacore v. Expedite Video Conferencing Servs., Inc.*, 14-CV-6103, 2019 WL 96243, at *5 (E.D.N.Y. Jan. 3, 2019). Additionally, "[i]t is within the district court's discretion to determine the amount and nature of the bond."  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04-CV-8141, 2011 WL 13388684, at *1 (S.D.N.Y. Apr. 7, 2011) (quoting *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 292-93 n.11 [S.D.N.Y. 2010]).

## III.     ANALYSIS

### A.  Whether Plaintiffs Have Sufficiently Established Personal Jurisdiction Over Defendants

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Plaintiffs' memoranda of law.  (Dkt. Nos. 35, 51.)  To those reasons, the Court adds the following analysis.

#### 1.  Defendants Purposefully Availed Themselves of the Opportunity to Transact Business in New York

The Court finds that Plaintiffs have both alleged and provided evidence of sufficient contacts to show that Defendants purposefully availed themselves of transacting business in New York.  Defendants spend much of their memoranda arguing that the purchase of Black Ice air fresheners by Plaintiffs' agent cannot suffice to establish personal jurisdiction, while Plaintiffs argue that it can, with both sides citing cases in support of their argument.  However, the Court finds that it need not decide whether a single purchase by a plaintiff or its agent can or should suffice to show that a defendant purposefully availed itself of transacting business in New York, because through their supplemental submission Plaintiffs have provided evidence of many other sales (of both Black Ice and non-Black Ice products) to New York customers that the Court must consider.  *See Chloe*, 616 F.3d at 164 (indicating that the court must consider the totality of the defendant's contacts with the forum when assessing whether the defendant purposefully availed itself of transacting business in the forum).

The Court rejects Defendants' argument that sales of non-Black Ice air fresheners to New York customers are irrelevant to the analysis, and finds that such sales can (and should) be considered as part of the larger picture of Defendants' contacts with New York.  *See Chloe*, 616 F.3d at 166-67 (finding that shipments of handbags that did not bear trademarks registered to the plaintiff were relevant to the jurisdictional analysis because, although the plaintiff's claims were not based in those particular shipments, they evidenced a "larger business plan purposefully directed at New York"); *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975) (noting that courts look to "the totality of the defendant's activities within the forum" when determining whether the defendant transacted business within the state for the purposes of the long-arm statute); *Zelouf Int'l. Corp. v. Na El, Inc.*, 13-CV-1788, 2014 WL 1318372, at *4-5 (S.D.N.Y. Mar. 28, 2014) (finding that defendant's sale of

merchandise in New York, even if it was non-infringing, was related to plaintiff's copyright infringement cause of action).  Indeed, Defendants provide no legal authority throughout their three separate memoranda to support their oft-repeated assertion that sales of non-infringing products cannot be considered because claims such as those Plaintiffs bring here do not "arise from" such sales.  As will be discussed in more detail below, Defendants' interpretation of the "arise from" requirement is far more stringent than the interpretation that has been made by the Second Circuit and other courts.  Indeed, Defendants' interpretation is directly at odds with the Second Circuit's explicit holding in *Chloe*: "that an employee's single act of shipping a bag—*any* bag, not necessarily a counterfeit one—into the State of New York, combined with the employer's other business activity involving the State of New York, gives rise to an inference that the defendant 'purposefully avail[ed himself] of the privilege of conducting activities within the forum State.'"  *Chloe*, 616 F.3d at 165 n.3.  *Chloe* therefore stands for the proposition that all the contacts with New York need not themselves be infringement activity to be included in the analysis of whether personal jurisdiction exists.

In rebuttal to Plaintiffs' allegations and evidence of these sales, Defendants argue that the Supreme Court's decision in *Bristol-Myers Squibb*, 137 S. Ct 1773, renders invalid *Chloe*'s reliance on sales of non-infringing products as being violative of due process.  In *Bristol-Myers Squibb*, the Supreme Court held that the California Supreme Court's interpretation of California's long-arm jurisdiction statute as permitting exercise of jurisdiction related to out-of-state plaintiffs based on the significant number of contacts with the state (even though those contacts were unrelated to the out-of-state plaintiffs) violated due process. *Bristol-Myers Squibb*, 137 S. Ct at 1778-79, 1781.  Specifically, the Supreme Court found that it was not sufficient that the out-of-state plaintiffs were asserting claims identical to the claims of the in-state plaintiffs

because those out-of-state plaintiffs had no connection to California, and thus there was no reason that the defendant would have anticipated facing claims by out-of-state plaintiffs in a California court. *Id.* at 1781. Thus, the problem with the California court's approach was that it allowed for the exercise of specific personal jurisdiction in a forum "without identifying any adequate link between the State and the nonresidents' claims." *Id.*

The case before this Court presents an entirely different scenario. Firstly, the Second Circuit explicitly acknowledged in *Chloe* that the amount of contacts is not sufficient, by itself, to allow for the exercise of personal jurisdiction over a defendant, but rather that there must also be "a substantial relationship between the transaction and the claim asserted.'" *Chloe*, 616 F.3d at 170 (quoting *Kreutter*, 527 N.Y.S.2d 195). Thus, *Chloe* does not indicate a "sliding-scale" approach to jurisdiction such as was found to be constitutionally improper in *Bristol-Myers Squibb*. Secondly, the use of sales of non-infringing goods to customers in the forum state is a far-cry from *Bristol-Myers Squibb*, in which the out-of-state plaintiffs had *no* connection to California and personal jurisdiction was based solely on the fact that in-state plaintiffs (who did have connections with California) were asserting the same claims for the same injuries caused by the same pharmaceutical; the fact that Defendants believe such sales are not related to an infringement claim (which, as already discussed, is a belief whose relevance is unsupported by legal precedent) does not make the consideration of those sales in the personal jurisdiction analysis constitutionally infirm. Because *Bristol-Myers Squibb* does not suggest that *Chloe* is inconsistent with the current state of the law, and because the Second Circuit has not in any way overruled *Chloe* or altered its approach through later decisions, the Court finds no reason to stray from *Chloe*'s indication that sales of non-infringing goods that are sufficiently related to a

plaintiff's claims may be considered when assessing the totality of a defendant's contacts with a forum.

Having found that it may consider the sales of both Black Ice and non-Black Ice air fresheners to New York customers, the Court finds that these sales provide sufficient indication that Defendants purposefully availed themselves of transacting business in New York.  In their supplemental memorandum, which was filed after the parties conducted some amount of jurisdictional discovery, Plaintiffs assert that Defendants have made at least five sales of Black Ice products to New York customers (including the sale to Plaintiffs' agent), and have made at least 141 sales total to 64 different New York customers.  (Dkt. No. 51, at 1.)  For comparison, the Second Circuit found in *Chloe* the sale of a single infringing bag and further sales of 52 non-infringing bags to be sufficient to suggest that the exercise of personal jurisdiction was appropriate.  *Chloe*, 616 F.3d at 166-67.  Of the sales of Black Ice air fresheners shown here, one was conducted in 2015, three were conducted in 2018, and the purchase by Plaintiffs' agent was conducted in 2019.  (Dkt. No. 35, Attach. 4, at 4; Dkt. No. 51, at 2.)  The non-Black Ice sales range in time between 2014 and 2019.  (Dkt. No. 51, Attachs. 6-44.)  Notably, even if the Court were to discount the orders that were billed to a New York company but shipped to an address outside of New York, the records provided by Plaintiffs still show a significant number of shipments to New York that would support a finding that Defendants have purposefully availed themselves of transacting business in New York.

Additionally, Plaintiffs have also alleged that Defendants operate interactive websites that allow customers to place orders and provide payment through those websites.  It is well established in the Second Circuit that operation of a "highly interactive" website that allows for purchase of goods through the website can, along with other contacts, constitute a basis for

exercising personal jurisdiction.  *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 251-52 (2d Cir. 2007) (adopting the standard for when a website can give rise to personal jurisdiction, noting that this analysis is governed by "the level of interactivity and commercial nature of the exchange of information that occurs"); *Zimmerman v. Cornell Outdoor Edu.*, 20-CV-0892, 2021 WL 75736, at \*4 (N.D.N.Y. Jan. 8, 2021) (Hurd, J.) (noting that, although the maintenance of an interactive website generally allows for the exercise of personal jurisdiction, "courts typically look for some evidence of purposeful availment beyond the mere existence of an interactive website"); *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 542 (S.D.N.Y. 2015) (finding that plaintiff's allegations that defendant operated a highly interactive website that offered merchandise to New York customers and shipped the merchandise to those customers in New York, and that plaintiff made a purchase through this website, were sufficient to establish personal jurisdiction); *RVDirect.com v. Worldwide RV*, 10-CV-0701, 2010 WL 5391535, at \*5-6 (N.D.N.Y. Dec. 21, 2010) (Kahn, J.) (interpreting *Chloe* as requiring that there be "some additional evidence" of defendant's purposeful availment beyond the maintenance of an interactive website that permits consumers to place orders online); *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (finding personal jurisdiction where the defendant operated a website that allowed New York customers to apply for loans online and chat online with a representative).  The Court therefore finds that Plaintiffs' allegations that Defendants maintained an interactive website, strengthened by their further allegation (and evidence thereof) that their agent ordered Black Ice air fresheners through Defendants' website and had them shipped to an address in New York, provides additional support to the finding that Defendants purposefully availed themselves of transacting business in New York.[1]

---

[1]       The Court finds that Defendants' assertion that most customers do not order through their websites does not change the fact that they allow any customer who wishes to place an order through their websites to do so.  (Dkt. No. 51, Attach. 2, at 49-51; Dkt. No. 52, at 1.)  Whether or

### 2.   Plaintiffs' Claims Arise from Defendants' Contacts

Because Plaintiffs' claims involve as a crucial element the action of marketing and selling

Black Ice air fresheners as a basis for the alleged claims (including trademark infringement,

unfair competition, and trademark dilution), Plaintiffs have sufficiently shown that their claims

arise from Defendants' New York contacts for the purposes of making at least a prima facie

showing of specific personal jurisdiction.  *See Licci ex rel. Licci*, 732 F.3d at 169 (finding that

the existence of a New York account was sufficient to establish that the claims arose from the

defendant's New York contacts where the claims involved allegations that defendant violated

statutory duties by using that account to funnel money to terrorist organizations).  There is

clearly a nexus between their claims and the alleged purchases of Black Ice air fresheners given

that Plaintiffs are alleging that Defendants infringed that trademark.  *See Strauss v. Credit

Lyonnais, S.A.*, 175 F. Supp. 3d 3, 20 (E.D.N.Y. 2016) (finding that transfers from a bank

account were sufficient to establish a connection between the claim and the forum because those

transfers, although minimal, were "an integral facet of the conduct that is the basis for all of

Plaintiffs' claims") (citing *Chloe*, 616 F.3d at 166 [finding that the shipment of a single

counterfeit handbag into New York created a sufficient nexus with the forum because that

shipment "*was* the conduct underlying the lawsuit"]).  Additionally, the sale of non-Black Ice air

fresheners to New York customers is not "merely coincidental" or "tangential" to the conduct

underlying Plaintiffs' claims.  Notably, Plaintiffs allege (and have provided evidence) that

Defendants advertise their Black Ice products most relevantly on their websites, which plausibly

suggests that Black Ice products would have been advertised and available for sale to any of

Defendants' New York customers, whether or not those customers actually purchased Black Ice

---

not their websites are their principle mode of commerce does not detract from the interactivity of
those websites.

air fresheners along with other non-Black Ice air fresheners.  Defendants have not provided any indication (or even argument) that their New York customers could not view the fact that they offered Black Ice air fresheners when placing orders.  Because Defendants' use of the mark in their advertising and on their websites is also part of the alleged infringement, customers were not necessarily required to have purchased the Black Ice air fresheners to create customer confusion or blurring related to the Black Ice mark.  Given that likelihood of consumer confusion and/or blurring is an element of the claims Plaintiffs have asserted, the act of advertising Black Ice products to their New York customers (whether or not those customers ultimately chose to purchase Black Ice air fresheners specifically) is sufficient to show a nexus between Defendants' contacts from allegedly infringing and non-infringing sales alike sufficient to make at least a prima facie showing that Plaintiffs' claims arise from all Defendants' sales of air fresheners to New York customers.  *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009) ("To prevail on a trademark infringement and unfair competition claim under 15 U.S.C. §§ 1114[1], 1125[a], in addition to demonstrating plaintiff's mark is protected, the plaintiff must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods."); *Savin Corp. v. Savin Gr.*, 391 F.3d 439, 449 (2d Cir. 2004) (indicating that a claim of federal trademark dilution requires a showing that a defendant's use of plaintiff's mark "diminishes the capacity of the mark to identify and distinguish goods and services" without regard to the existence of consumer confusion); *Fireman's Ass'n of State of New York v. French Am. Sch. of New York*, 839 N.Y.S.2d 238, 242 (N.Y. App. Div. 3d Dep't. 2007) (noting that a trademark dilution claim under N.Y. Gen. Bus. L. 360-1 requires a showing that a defendant's use of the plaintiff's distinctive mark raises the possibility that the mark will lose its ability to

22

serve as a unique identifier of the plaintiff's product).  Given that Plaintiffs' claims are not based

solely on the sale of Black Ice products, but also on the advertising or promotional use of the

Black Ice trademark, Plaintiffs' allegations show that sales of non-Black Ice air fresheners are

sufficiently related to their underlying trademark claims such that their claims "arise from" those

sales for the purposes of personal jurisdiction.

In sum, Plaintiffs have alleged facts related to, and provided evidence of, sufficient contacts

arising from their claims to establish the existence of specific personal jurisdiction over

Defendants.

### 3.   Exercising Personal Jurisdiction over Defendants Comports with Due Process Requirements

Having found that the exercise of personal jurisdiction is appropriate under the New York

long-arm statute, the Court also finds that such exercise comports with due process requirements.

As discussed in detail above in Part III.A.1., Plaintiffs have alleged (and provided evidence of)

sufficient minimum contacts that are related to their claims to assure that Defendants

"purposefully availed [themselves] of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws."  *Chloe*, 616 F.3d at 171 (quoting

*Burger King*, 471 U.S. at 475).

The exercise of personal jurisdiction in New York is also reasonable.  Notably, Defendants

do not make any arguments that the exercise of personal jurisdiction would offend traditional

notions of fair play and substantial justice.  Although Defendants might be burdened by having

to litigate in New York, the same would be true for Plaintiffs if they were forced to litigate their

claims in Nevada.  New York has an interest in not only protecting the rights of entities formed

under its laws, but also in protecting its citizens from infringing or counterfeit products.

Plaintiffs have an interest in litigating their claims in New York, given that they are based within

the state.  Finally, the interstate judicial system's interest and the shared interest of the several States are essentially neutral in this case, given that there are no allegations or evidence that New York is any less able to serve these interests than another forum.  Simply put, there is nothing alleged that would suggest that exercising personal jurisdiction in New York would violate due process.

Lastly, having found that personal jurisdiction exists as to Defendant Scented Promotions, the Court also finds that, based on Plaintiffs' allegations and evidence, the two individual Defendants are also subject to personal jurisdiction for their actions as part of Defendant Scented Promotions, which included advertising and effecting sales of the relevant air fresheners.  *See Chloe*, 616 F.3d at 164 (noting that "Section 302[a] also confers jurisdiction over individual corporate officers who supervise and control an infringing activity").

### A.  Whether Plaintiffs' Request for a Bond Should Be Granted

After careful consideration, the Court answers this question in the negative.  Plaintiffs' motion for a bond is pursuant to Fed. R. App. P. 7, which, as discussed above in Part III.C. of this Decision and Order, assures the payment of costs on a pending appeal.  However, while Plaintiffs' motion was pending, the Second Circuit granted Defendants' motion to voluntarily dismiss their appeal pursuant to Fed. R. App. P. 42(b), and so dismissed that appeal.  (Dkt. No. 57 [Mandate filed Feb. 19, 2021].)  On March 4, 2021, the Court directed the parties to file letter-briefs regarding whether the dismissal of Defendants' appeal rendered Plaintiffs' motion for a bond moot.  (Dkt. No. 58 [Text Order filed Mar. 4, 2021].)  In accordance with this Text Order, both Plaintiffs and Defendants advised the Court that their positions are that the Second Circuit's mandate did indeed render Plaintiffs' motion moot.  (Dkt. Nos. 59, 60.)  The Court

therefore finds that, because there is no longer an appeal pending, Plaintiffs' motion for a bond related to anticipated appeal costs is now moot and must be denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Claims I through V of Plaintiffs' Complaint for lack of personal jurisdiction (Dkt. No. 33) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiffs' motion for bond pending appeal (Dkt. No. 55) is **<u>DENIED</u>** as moot.

Dated: March 19, 2021
     Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge